IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCO MENTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 03-1283 |
| | ) | |
| COMMUNITY COLLEGE OF BEAVER COUNTY, | ) ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

CONTI, District Judge

    In this memorandum order, the court considers the motion for summary judgment filed by defendant Community College of Beaver County ("defendant" or the "college"). After considering the parties' respective concise statements of material facts, the respective motions and briefs submitted by defendant and plaintiff Franco Menta ("plaintiff" or "Menta"), the court will grant defendants' motion in part and deny the motion in part.

***Factual Background and Procedural History***

In 1989, plaintiff was hired by defendant as a Special Services Aide. Defendant's Statement of Material Facts ("Def's St") ¶ 1. The Special Services Aide position was funded pursuant to the availability of grant money. Def's St. ¶ 2. Plaintiff's position was available on a year-to-year basis, subject to defendant's receipt of grant funds. Id. ¶ 3. The position was part of the college's Learning Center and was funded by a Carl Perkins Grant. Id. ¶ 4. The Carl Perkins Grant is a federal fund that is dispensed through the United States Department of Education. Id. ¶ 5. The grant is issued on a fiscal year basis running from July 1 through June 30. Id. ¶ 6.

In 1997, defendant began a reorganization of the Learning Center. Id. ¶ 7. One of the main goals of the reorganization was to provide more efficient services to evening students. Id. ¶ 10. Defendant created a campus-wide task force to evaluate the Learning Center's scope and function and to make recommendations for improvements. Id. ¶ 7. As a result of the task force's work, several personnel changes occurred. Id. ¶ 8. In 1998-99, a full-time Support Services Supervisor position was eliminated. Id. In 1999-2000, secretarial positions were changed to part-time positions and a full-time Office Support Services Coordinator position was created. Id. In 2000-01, a Computer Lab Assistant was downgraded to a part-time position, four computer lab positions were upgraded to full-time positions, and Career Services Specialist was upgraded to a full-time position. Id. In 2001-02, funding for a Financial Aid Technical Specialist was not provided, two Financial Aid Counselors were not funded, academic program areas lost funding, and part-time subject specific tutors were created. Id.

In 2002, due to financial constraints, defendant continued to reorganize the Learning Center. Id. ¶ 9. In the early spring of 2002, plaintiff was informed about the reorganization. Id.

¶ 11.  Under the plan, three positions would be eliminated: Perkins Vocational Service Coordinator, Perkins Supportive Service Specialist, and Learning Center 24-Hour/Week Tutor. Id. ¶ 14.  Two full-time positions were to be created: Career Link/Service Specialist and Special Populations Coordinator.  Id. ¶ 13.

On or around June 10, 2002, plaintiff received a letter from the Director of the Learning Center, Jan Kaminski ("Kaminski"), informing him that his position would be eliminated in accordance with defendant's reorganization plan.  Id. ¶ 15.  The letter was also sent to employees C.H. and M.P. informing them that their jobs would also be eliminated.  Id. ¶ 16.  Plaintiff, C.H., and M.P. were also informed that, provided defendant received funding, two full-time grant-funded positions–Special Population Coordinator and Career Link/Service Specialist–would become available for 2002-03 school year.  Id. ¶ 17.

In 2002, a total of four candidates applied for the Special Population Coordinator position.  Id. ¶ 19.  Two candidates, including plaintiff, were interviewed for the position.  Id. ¶ 18.  The candidates were interviewed by Michael Macon, Vice President for Academic and Student Services ("Macon"), David Albanese, Director of Human Resources ("Albanese"), and Kaminski Id. ¶ 20.  Plaintiff, a male, believed that the interview process was a "sham" and that he was under the impression that C.H., the successful candidate–a woman–participated in a mere five minute interview.  Deposition of Frano Menta ("Menta Dep.") at 108-110.  Plaintiff did admit that he could have been mistaken and that C.H.'s interview could have taken place at a different time and lasted longer.  Id.

C.H., received higher interview scores than those the of plaintiff. Def's St. ¶ 21.  Macon rated C.H. superior to plaintiff.  Id. ¶ 22.  Macon's ratings for C.H.'s included "very good" in

five categories and "good" in four.  Id.  Plaintiff was rated "average" in four categories, "good" in four categories, and "very good" in one category.  Id.  Albanese also rated C.H. higher than plaintiff.  Id. ¶ 23.  Albanese rated C.H. "very good" in one category, between "good" and "very good" in seven categories, and "good" in one category.  Albanese rated plaintiff "very good" in one category, "good" in two categories, between "average" and "good" in one category, and "average" in five categories.  Id.  Kaminski rated C.H. higher than plaintiff.  Id. ¶ 24.  Kaminski rated C.H. "very good" in seven categories and "good" in two categories.  Id.  Kaminski rated plaintiff "good" in four categories and "average" in five categories.  Id.  Albanese felt that plaintiff interviewed poorly and Macon believed that C.H. was the better candidate, due to her educational background and knowledge of supportive services.  Id. ¶¶ 25-26.  While Albanese described plaintiff's interview as "poor," he actually rated plaintiff's interview conduct as "good" on the interview evaluation sheets.  Def's Appx., I & L.  Albanese gave the same score on interview conduct to plaintiff that he gave to C.H.  Id.  In terms of qualifications, at the time of the interviews, both plaintiff and C.H. had associates' degrees.  Menta Dep. at 9.  Plaintiff also had 132 credits towards a bachelor's degree.  Id.  C.H. was enrolled in a bachelor's program and had some continuing education credits, but had yet to earn a degree.  Deposition of C.H. ("C.H. Dep.") at 5.  Plaintiff also had thirteen years of experience working at the college, while C.H. had only five.  Menta Dep. at 30; C.H. Dep. at 4.

      In 2002, four candidates, including plaintiff, applied for the Career Link/Service Specialist position.  Def's St. ¶ 27.  The candidates were interviewed by Macon, Albanese, and Scott Ensworth, Dean of Enrollment Services ("Ensworth").  Id. ¶ 28.  M.P., the successful candidate for the Career Link/Service Specialist position–a woman–received higher interview

scores than plaintiff.  Id. ¶ 29.  Macon rated M.P. superior to plaintiff.  Id. ¶ 30.  He rated M.P. "very good" in four categories and "good" in five categories.  Id.  Macon rated plaintiff "very good" in one category, "good" in four categories, and "average" in four categories.  Id.  Macon felt that M.P.'s interview was stronger than plaintiff's.  Id. ¶ 35.  Macon did, however, noted that M.P.'s language was "a little rough."  Def's App. Q.  Despite that fact, Macon still rated M.P. higher than plaintiff in interpersonal skills—"good" for M.P. as opposed to "average" for plaintiff–despite nothing no problems with plaintiff's ability to communicate.  Def's App. N & Q.  Macon did note under the "weaknesses" section that plaintiff did not have strong communications skills and gave very short answers.  Def's App. N.  In addition, under the "extra comments" section, Macon noted that plaintiff was "looking for any full-time job" and was "not really prepared."  Id.

Albanese also rated M.P. superior to plaintiff.  Id. ¶ 31.  Albanese rated M.P. between "very good" and "good" in seven categories and "good" in two categories.  Id.  Albanese rated plaintiff "good" in two categories, between "good" and "average" in three categories, and "average" in four categories.  Id.  Albanese stated that he felt defendant "chose the person who was the best qualified" and that plaintiff performed poorly in the interview.  Id. ¶¶ 33-34.  Despite his comment that plaintiff performed poorly in the interview, Albanese had rated plaintiff's interview conduct as "good."  Def's App. I.

Plaintiff had thirteen years experience at the college prior to the interviews.  Menta Dep. at 30.  M.P. had worked at the college since 2000, but her employment was not continuous.  Deposition of M.P. ("M.P. Dep.") at 6-8.  Ensworth rated M.P. superior to plaintiff.  Id. ¶ 32.  Ensworth rated M.P "very good" in seven categories and "good" in two categories.  Id.  Ensworth rated plaintiff "good" in three categories and "average" in six categories.  Id.

Defendant also planned to hire three people for the part-time position of Accommodation Specialists. Id. ¶ 36. Those positions were never posted for application because posting was not required by the Collective Bargaining Agreement. Id. ¶ 37. Plaintiff believed he would be considered for part-time employment because no one told him of any part-time specific application process and because he had applied for full-time employment. Menta. Dep. at 123. Plaintiff stated that he knew, prior to receiving a letter dated June 26, 2002, that the three part-time positions were going to be created because he overheard two other employees discussing it. Def's St. ¶ 40-41; Menta Dep. at 158. Plaintiff admitted that nothing precluded him from approaching an administrator and informing the administrator that he wished to be considered for part-time employment and that no one told him not apply for the part-time positions or that he would automatically be considered for those positions. Def's St. ¶ 42; Menta Dep. at 123.

Plaintiff felt that the atmosphere in his office favored female employees. Menta Dep. at 113. Plaintiff was the only male employee in the department. Id. Plaintiff believed he was more harshly scrutinized that the other female employees in his department and kept notes on the conduct of his supervisors. Id. at 138. Plaintiff complained to Albanese about his feelings. Id. at 153.

On August 28, 2003, Plaintiff filed a complaint with this court against the County of Beaver (the "county") and the college. Count I charged the county and the college with sex discrimination in violation of Title VII of the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000e-2(a). Count II charged the county and the college with similar violations of the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. ANN. § 951 *et seq*. (West 1991). In both counts, plaintiff alleged, among other things, that the college discriminated against him on this basis of his sex by hiring a female candidate for two different full-time

6

positions. On December 23, 2003, a motion to dismiss was filed by defendant and the county seeking to strike plaintiff's claim for punitive damages and to dismiss the county from the action. On April 30, 2004, plaintiff filed a response consenting to the motion. On May 6, 2004, an order granting defendant's motion was granted. On March 11, 2005, defendant filed a motion for summary judgment with respect to both of plaintiff's remaining claims.

## *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 CHARLES ALAN WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 40 (2d ed. 1983)); Pollack v. City of Newark, 147 F.Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or *otherwise made admissible in evidence*") (emphasis added).

*Analysis*

**I.     The Legal Framework**

Title VII was enacted to prohibit employers from discriminating against employees with respect to the compensation, terms, conditions, or privileges of employment[1]. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981).  Since its inception, Title VII has made it an "unlawful employment practice for any employer . . . to discriminate against any individual . . . *because of* such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  The Supreme Court recognized several years after the passage of Title VII that it is often difficult for a plaintiff to prove that an employer acted with "conscious intent to discriminate."  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  One manner in which plaintiffs can meet this ultimate burden of persuasion is by demonstrating that an employer's stated reason for the challenged action was not the true reason, but rather was a pretext for unlawful discrimination.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 247, 253 (1981).  In McDonnell Douglas, the Supreme Court developed the now familiar burden-shifting framework for courts to utilize as a tool in analyzing disparate treatment claims.  The familiar McDonnell Douglas framework requires a plaintiff alleging a violation of Title VII to first establish a *prima facie* case of discrimination. The *prima facie* case, the elements of which depend upon the type of claim the plaintiff is alleging, "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection."  Texas Dept. of Community Affairs v.

---

[1]For the purposes of this summary judgment motion, the court need not distinguish between Title VII and the PHRA.  See Jones v. School Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999)(" We do not distinguish between the claims under federal and Pennsylvania law in our disposition of the case as we agree with Jones's contention that the standards are the same for purposes of determining the summary judgment motion."). See also Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  The parties apparently agree with this approach as neither made any attempt to distinguish the two statutes on this issue in their submissions to the court.

Burdine, 450 U.S. 248, 254 & n.6 (1981). In so doing, the *prima facie* case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Id. at 254.

If the plaintiff successfully demonstrates a *prima facie* case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. Simpson v. Kay Jewelers, 142 F.3d 639, 644 n.5 (3d Cir. 1998). The burden on the defendant at this junction is "relatively light," and the defendant can satisfy this burden "by introducing evidence which, *taken as true*, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.2d 759, 763 (3d Cir. 1994) (emphasis added).

Once the defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "the McDonnell Douglas framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [i]s discrimination *vel non*." See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). The plaintiff, thus, has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).

### II.     Plaintiff's Title VII and PHRA Claims for Full-Time Employment

To establish a claim for sex discrimination under Title VII, plaintiff must establish that: (1) he is a member of a protected class; (2) he is qualified for the position sought; (3) he was rejected for the position; and (4) that the employer filled the position with a similarly situated person from a different class. Barber v. CSX Distribution Services, 68 F.3d 694, 698 (3d Cir. 1995). Defendant does not dispute that plaintiff establishes a *prima facie* case for a claim of sex

9

discrimination for defendant's failure to hire plaintiff as a Career Link/Service Specialist Position and for the position of Special Populations Coordinator. Defendant, however, argues that it had a legitimate, non-discriminatory reason for not hiring plaintiff for either position.

As stated earlier, under McDonnell Douglas, once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. Simpson, 142 F.3d at 644 n.5. This is a "relatively light," burden and the defendant can satisfy this burden "by introducing evidence which, *taken as true*, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." Fuentes, 32 F.2d at 763. The employer, under this framework, need not show that the reason it offers actually motivated its behavior[2]. Id.

In this case, defendant asserted that it simply hired the best candidate for both the Career Link/Service Specialist position and the Special Population Coordinator Position. That assertion is supported by evidence in the record and certainly satisfies defendant's burden of production under McDonnell Douglas. Defendant points to evidence of record that shows that four individuals applied for the position of Special Population Coordinator Position. Two of those applicants were interviewed, including plaintiff. The successful applicant, C.H., scored higher than plaintiff on all three interviewers' evaluation sheets. In addition, the evidence of record indicates that Albanese felt that plaintiff performed poorly in the interview. Macon stated that he believed that C.H., due to her educational background and knowledge of supportive services, was the better candidate for the position. These reasons indicate that defendant had a legitimate, non-

---

[2]The court reiterates that, at this stage in the burden shifting analysis under McDonnell Douglas, the burden of *production* shifts to the defendant. At all times, however, the burden of persuasion rests with the plaintiff. Fuentes, 32 F.3d at 763; Simpson v. Kay Jewelers, 142 F.3d at 644 n.5.

discriminatory reason for not hiring plaintiff for the Special Population Coordinator position.

With regard to plaintiff's application for the Career Link/Service Specialist position, four candidates applied for the position and at least two, including plaintiff, were interviewed. The successful candidate for the Career Link/Service Specialist position, M.P., scored higher than plaintiff on all three interviewers' evaluation sheets. Both Macon and Albanese felt that M.P.'s interview was stronger than plaintiff's or that plaintiff performed poorly in the interview. Albanese also testified that he believed that the college hired the most qualified person for the Career Link/Service Specialist position. These reasons, supported by evidence of record, certainly support the argument that defendant had a legitimate, non-discriminatory reason for not hiring plaintiff for the Career Link/Service Specialist position.

With respect to the final part of the test, "[o]nce the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Fuentes, 32 F.3d at 763.

The United States Court of Appeals for the Third Circuit developed the following two-prong test (the "Fuentes test") formulating the standard a plaintiff must meet in order to survive summary judgment when the employer articulates a legitimate, non-discriminatory reason for the plaintiff's termination:

> In order to survive summary judgment when the employer articulates a legitimate non-discriminatory reason for its action, plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

11

Fuentes, 32 F.3d at 764.  The two prongs of the Fuentes test are distinct and have been analyzed under different standards in subsequent court decisions.  Both prongs of the Fuentes analysis will be reviewed to determine whether sufficient evidence was presented to defeat summary judgment.  See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-1113 (3d Cir. 1997) (analyzing ADEA action under both prongs of Fuentes framework).

**I.      Prong One**

Prong one of the Fuentes test focuses on whether the plaintiff submitted evidence from which a factfinder could reasonably disbelieve the employer's articulated legitimate reasons for not hiring the plaintiff.  Under this prong, the plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer that the proffered non-discriminatory reason 'did not actually motivate' the employer's action."  Simpson, 142 F.3d at 644.  The district court under this prong must focus on the legitimate, non-discriminatory reason offered by the employer.  Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531(3d Cir. 1992) (stating that a plaintiff "does not establish pretext . . . by pointing to criticisms of members of the non-protected class, or commendation of the plaintiff, in categories the defendant says it did not rely upon[.]").  The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination.  Ezold, 983 F.2d at 527 (3d Cir. 1992).  Furthermore, the court should not examine the issue of whether the employee has skills in an area *other than that identified by the employer* as the basis for the failure to hire, because the court then would be impermissibly substituting its own business judgment for that of the employer.

Decisions in this context usually turn upon whether the employer's stated reason for termination is so implausible that a reasonable factfinder could not believe it.  For example, in Brewer v. Quaker State Oil Refining Corporation, 72 F.3d 326 (3d Cir. 1995), the plaintiff was terminated for deficient sales performance.  The evidence of record, however, disclosed that Brewer received a bonus three months before he was fired and that he was the only sales representative in his region who received such a bonus.  The court held that, where the primary measure of Brewer's performance was sales, and where he was the leading salesperson in the region, his employer's stated reason for his termination was "contradictory to [its] admission that the most important standard of job performance is sales." Id. at 332.  According to the court, "[a] factfinder could find it implausible that Quaker State would have fired Brewer for such deficiencies when he was successful in the sole area identified by Quaker State's own performance incentive program – sales." Id.

Similarly, in Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir. 1995), the employer stated that Sempier was terminated based upon poor performance that caused the company to restructure the nature of his responsibilities.  The evidence of record, however, disclosed that (1) Sempier never received any unfavorable criticism that his performance was poor or inadequate; and (2) the employer failed to produce any other evidence of poor performance or to make specific allegations of Sempier's deficiencies. Id. at 731-733.  Thus, there was evidence on the record that a reasonable factfinder could conclude that the reason given by Sempier's employer was a pretext for age discrimination. Id. at 732-33.

In this case, plaintiff argues that defendant's stated reasons for its failure to hire him are pretextual.  Plaintiff claims that defendant's interview process for the Special Populations Coordinator position was a "sham."  Plaintiff specifically points to the amount of time spent

13

interviewing the two candidates for this position. In addition, Albanese, despite commenting that he believed plaintiff's interview performance to be "poor," gave plaintiff the same rating as C.H. on the his evaluation sheets. In addition, the court notes that plaintiff had thirteen years experience working at the college, while C.H. had worked there for only five years. Finally, Macon commented that he felt C.H. had a better educational background for the position despite the fact that both plaintiff's and C.H.'s education credentials were similar at the time of the interviews.

With regard to plaintiff's claim that defendant's reasons for not hiring him for the position Career Link/Service Specialist were pretextual, plaintiff claims that the successful candidate was described by Macon as being "a little rough" with regard to language, speech, and interpersonal skills. Plaintiff notes that, despite that observation, M.P. was still rated higher in interview skills on Macon's evaluation sheet than plaintiff. In addition, plaintiff notes that he had thirteen years experience at the college while M.P. had only worked there since 2000 on an intermittent basis. The court notes, however, that Macon indicated on his evaluation sheet that plaintiff did not appear to be prepared in his interview and was simply looking for any kind of full-time employment.

It is not the function of this court to determine whether defendant's business judgment in hiring another candidate over plaintiff was correct. Rather, the court must view the evidence to determine whether defendant's stated reasons for not hiring plaintiff could reasonably be found by a jury to be pretextual. The court finds that the facts reflected in the record make this matter a close call. In reviewing the record, however, in the light most favorable to the non-moving party, the court finds that plaintiff presented evidence sufficient for a reasonable jury to conclude that the stated reasons for defendant's failure to hire plaintiff "did not actually motivate the

employer's action." The evidence of record in this case shows that the two candidates ultimately selected by defendant did, in fact, score better than plaintiff in reviews conducted by the interview panels for each position, yet both candidates had less experience than plaintiff and there were certain inconsistencies in the reasons given for not selecting plaintiff. One interviewer stated that plaintiff interviewed "poorly" yet rated his interviewing skills as "good" on his evaluation sheet after the interview. Another interviewer stated that he felt candidate C.H.'s educational qualifications made her a better choice than plaintiff for the position. This statement was made despite plaintiff and C.H. having similar educational backgrounds. The court finds that plaintiff presented sufficient evidence to allow a factfinder reasonably to conclude that defendant's legitimate, non-discriminatory reasons for its failure to hire plaintiff were pretextual under the first prong of the Fuentes test and that since only one prong of the Fuentes test needs to be satisfied, summary judgment cannot be entered in favor of defendant. Fuentes, 32 F.3d at 765.

**II.     Prong Two**

The court is next required to examine the second prong of the Fuentes framework to determine if plaintiff presented sufficient evidence of pretext. This prong permits plaintiff to survive summary judgment if he can demonstrate, through evidence of record, that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Fuentes, 32 F.2d at 764. With respect to this prong, the United States Court of Appeals for the Third Circuit stated: "To show that discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with ***sufficient probative force*** that a factfinder could conclude by a preponderance of the evidence that [sex] was a motivating or determinative factor in the employment decision." Simpson 142 F.3d at 644-45

15

(3d Cir. 1998) (emphasis added). The types of evidence relied upon by the court of appeals under this prong of the Fuentes analysis are: (1) whether the employer previously discriminated against the plaintiff; (2) whether the employer has discriminated against other persons within the plaintiff's protected class or within another protected class; and (3) whether the employer has treated more favorably similarly situated persons not within the protected class. Id. The court will examine whether plaintiff submitted sufficient evidence under each of the three types listed above.

### A.   Evidence of previous discrimination against plaintiff

It appears to this court that plaintiff does not argue that he suffered from previous discrimination by defendant. Plaintiff did not address this issue in his briefing and adduces no evidence to this effect beyond the statement of his own subjective belief that his department was hostile to men.

### B.   Whether the employer discriminated against other persons in plaintiff's protected class or another protected class

Under this category, the court focuses on defendant's treatment of its employees that fall within a protected class for purposes of workplace discrimination laws.

The United States Court of Appeals for the Third Circuit indicated that "[s]tatistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext." Ezold, 983 F.2d at 542. The court of appeals, however, also stated that raw numerical evidence alone is of little value without a demonstration of its significance to the employer's alleged discriminatory motive. Id.; Keller, 130 F.3d at 1112.

In this case, the only evidence of record indicating that defendant discriminated against other male employees in hiring is that plaintiff was the only male employee in his department. That fact, alone, is not enough to satisfy plaintiff's burden under this prong.

### C. Whether employer treated more favorably similarly situated persons not within the protected class

The court again notes that it cannot find evidence in the record to support the argument that defendant treated plaintiff, or other males, differently than other employees not within the protected classes, i.e. females. Plaintiff applied for two positions with the college. He was granted an interview for each position. Not every applicant was afforded such a courtesy. Plaintiff attempts to argue that his interview lasted four times as long as C.H.'s interview for the Special Populations Coordinator position. Plaintiff testified, however, that he was not certain that C.H.'s interview only lasted for five minutes, as opposed to his twenty minute interview. In addition, the court finds it difficult to determine how a *longer* interview would tend to show that plaintiff was not given adequate consideration by the review panel. Certainly if plaintiff was given only five minutes with which to meet with his interviewers, he could argue that he was never given the time to express his interest in the position or detail his qualifications. Plaintiff's argument that the interview process was a "sham" and that C.H.'s interview lasted only five minutes is supported only by his own subjective belief. Plaintiff does point to his own subjective belief that he was more closely scrutinized than female employees and that his department was hostile to men. A plaintiff's subjective opinion that she was treated unfairly is not enough to show pretext. Rather, the *evidence of record* must support a finding that the defendant "made up" its reason. Castleman v. Acme Boot Co., 959 F.2d 1417, 1422 (7th Cir. 1992). The court

finds that plaintiff has little more than his own belief to support a finding of pretext under this prong of the Fuentes test.

### III.     Plaintiff's Title VII and PHRA Claims for Part-Time Employment

Plaintiff also claims that the college discriminated against him for its failure to hire him for three part-time Accommodation Specialist positions, despite plaintiff' admission that he did not apply for any of the positions.  Those positions were never posted for application because posting was not required by the Collective Bargaining Agreement.   Plaintiff stated that he knew, prior to receiving a letter dated June 26, 2002, that the three part-time positions were going to be created because he overheard two other employees discussing it.  Plaintiff admitted that nothing precluded him from approaching an administrator and informing the administrator that he wished to be considered for part-time employment.  Despite these facts, plaintiff did not apply for the part-time positions.

Plaintiff claims that he believed he would automatically be considered for these positions. Plaintiff, however, points to no evidence of record to support that belief and submitted no evidence that defendant was aware of his interest in the part-time positions.  Plaintiff's belief does not change the court's analysis because plaintiff admitted that he knew that three part-time positions were going to be created and there is no evidence in the record that defendant was aware plaintiff had an interest in the part-time positions[3].  See Chambers v. Wynne School Dist., 909 F.2d 1214, 1217 (8th Cir. 1990)("formal application will not be required to establish a *prima facie* case if the job opening was not officially posted or advertised and either (1) plaintiff had no

---

[3]There is a factual dispute with respect to whether plaintiff told Kaminski that he was *not* interested in part-time work.  Kaminski states that plaintiff told her that. Plaintiff states that he never made that statement.  Plaintiff, however, does not claim that he ever told defendant of his interest in part-time work. There is, thus, no evidence in the record that defendant had knowledge of plaintiff's interest in the part-time positions.

18

knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application ... the relevant inquiries are whether [plaintiff] had sufficient notice of the opening from other sources and whether [defendant] administration was aware of [his] interest in [the position].")(internal citations omitted).

Plaintiff's failure to apply for the positions when he knew the positions were available or to adduce evidence that defendant was aware of his interest in applying for these positions means that he cannot state a *prima facie* case for sex discrimination with respect to the part-time Accommodation Specialist positions.  see <u>Gentry v. Georgia-Pacific Corp.</u>, 250 F.3d 646, 652-3 (8th Cir. 2001)(holding that a plaintiff cannot establish a *prima facie* case for discrimination when he was aware that the positions existed but failed to apply for them); <u>Chambers</u>, 909 F.2d at 1217.

### *Conclusion*

After reviewing the undisputed material facts of record, the court determines, although this is a close issue, that plaintiff produced sufficient evidence by which a reasonable factfinder could conclude that defendant's reasons for failure to hire plaintiff for the two full-time positions were pretextual.  Plaintiff cannot, however, state a *prima facie* case for discrimination with respect to the three part-time positions because he failed to apply for those jobs.  Accordingly, summary judgment is GRANTED as to plaintiff's claims for part-time employment and DENIED as to plaintiff's claims for full-time employment.

*Order*

**AND NOW**, this 31st day of March 2006, upon consideration of the parties' arguments and supporting documents

**IT IS ORDERED** that defendants' motion for summary judgment (Doc. No. 25) is **GRANTED IN PART AND DENIED IN PART**.

By the court:
/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:   Counsel of record